## THE HOBOKEN FERRY COMPANY

### *v.*

MARGARET BALDWIN, individually, and as administratrix of Ralph Baldwin, deceased.

[Submitted March 28th, 1899. Decided May 26th, 1899. Filed September 26th, 1899.]

The defence of insanity to a sealed instrument is available at law under the plea or replication of *non est factum;* hence equity will not intervene at the instance of a plaintiff at law to enjoin the use by the defendant at the trial at

law of a release of the cause of action on the ground that it was executed when the releasor was insane, in the absence of proof that fraud was practiced in procuring its execution.

Heard on bill, answer, cross-bill and replication and proofs in open court.

*Mr. Edwin A. S. Lewis* and *Mr. John W. R. Besson,* for the complainant.

*Mr. John J. Fallon,* for the defendant.

PITNEY, V. C.

The question at issue by these pleadings will be best understood by a statement of the facts.

The defendant's intestate, Ralph Baldwin, was a bridge hand in the employ of the complainant at the Fourteenth street ferry in Hoboken, and on the 27th of November, 1895, he was injured in an accident which occurred at 'that point. The particulars of the accident are set forth at great length in a declaration in an action at law brought by the defendant as administratrix against the complainant annexed to complainant's bill as a schedule. No proof, however, was given of those particulars at the hearing, and the same was in nowise brought in issue.

The deceased was injured in several parts of the person and in the head, but walked to the house of his family physician, Dr. Atwell, and thence to his own home, where he was attended by him. He died fourteen months later, on January 20th, 1897. Letters of administration were taken out by the widow, the defendant, May 5th, 1897, and an action at law brought against the complainant in January, 1898.

The deceased was visited at his home by Dr. Fisher, the stated physician in the employ of the complainant, on the 17th of December, 1895, twenty days after the accident, who reported his case to the officials, and he was placed upon the half-pay list of the company and received such half pay for a period of time.

Hoboken Ferry Co. v. Baldwin.

Some time in January, 1896, Baldwin called on the superintendent of the complainant, Mr. Woolsey, and asked what more than he was already receiving the company was willing to do for him. Mr. Woolsey replied that he would see the officers of the company on the subject and let him know. He did bring the matter to their attention, and they authorized Mr. Woolsey to pay him $300 for a general release, which compensation was fixed on the basis of about six months' pay, with a verbal promise that as soon as he sufficiently recovered he would be taken back into the employ of the company. Mr. Woolsey thereupon wrote Mr. Baldwin as follows:

"OFFICE OF THE HOBOKEN FERRY COMPANY,
"1 NEWARK STREET, HOBOKEN,
"January 14, 1896.

"*Mr. Ralph Baldwin, 829 Park Avenue, Hoboken, New Jersey:*

"DEAR SIR—Please call at this office to-morrow, Wednesday, at 2:30 o'clock, and have your wife with you. We will then see what we can do in your case.

"Yours truly,
"C. W. WOOLSEY, *Supt.*"

Mr. Woolsey left instructions in his office that if Mr. Baldwin and his wife called in his absence to send them to Mr. Lewis, the solicitor of the company, who had his office in the same building, and communicated to Mr. Lewis the decision of the officers. Mr. Lewis was furnished with the money to pay Mr. Baldwin when he called, and in anticipation thereof prepared a general and special release to be signed by Mr. Baldwin and his wife. Mr. Baldwin and his wife did call at Mr. Woolsey's office, and, he being absent, they were directed to the office of Mr. Lewis, to which they repaired. Mr. Lewis announced to them what the company had decided to do, protesting at the same time that the company did not consider itself liable for any damages in the case, but were willing to pay $300 upon their signing a general release, which he read over and also fully explained to them. They thereupon executed the release and accepted the money. Mr. Lewis at the same time stated to them that Mr. Baldwin would have his old place whenever he

was ready to return to work, and that if he should not be able to perform the duties of his previous position he would probably be furnished with such light work as he could do.

Subsequently, in August, 1896, Dr. Fisher was sent for to see Mr. Baldwin, and found him sinking into dementia and had him placed in a hospital for the insane, where he remained until his death.

After the action at law was brought by Mrs. Baldwin and the defendant, the complainant herein, had pleaded the release, the complainant filed its bill in this cause setting up the circumstances and stating that the deceased left neither father, nor mother, nor brother, nor sister, and that Mrs. Baldwin was his sole next of kin, and asking this court to enforce the release in question against her as administratrix as well as personally. The defendant answered, and by a cross-bill asked the court to enjoin the complainant herein from setting up the release as a defence in the action at law, upon two grounds. First, that the deceased, Baldwin, was insane at the time he executed the contract; and second, that the same was procured from herself and her husband by fraud.

At the hearing the complainant's counsel being advised that it had been misinformed as to the fact that the widow and ad- ministratrix of the deceased was his only next of kin, but that he left a father and brother surviving him, abandoned the bill and asked for no relief under it; and the only issues considered by the court were those arising on the cross-bill and replication thereto.

At the hearing I held, in substance, that this court would not entertain jurisdiction of the question of insanity and set aside the release on that ground alone, because the plea of insanity would be a good answer in the action at law by way of replication to the plea of the release. But I did admit evidence on that question for the purpose of determining whether or not advantage had been taken by Mr. Lewis and the officers of the complainant company in procuring the release by fraudulent practices upon Mr. Baldwin and his wife at a time when Mr. Baldwin's mind was in a condition to make him an easy subject for such practices.

I am still of the opinion expressed during the taking of testimony, that if Baldwin was insane at the time of the execution of the release, that defence to it is available at law, and that this court should not interfere with it on that ground.

If he was so insane, then it was not his deed, and proof of his insanity will support the replication of *non est factum*. *1 Chit. Pl. *483, *484.* The defence of insanity differs from that of fraud, which was dealt with by the supreme court in *Connor, Administrator,* v. *Dundee Chemical Works, 21 Vr. 257,* which led to the suit in this court between the same parties, reported in *1 Dick. Ch. Rep. 576,* and upon which the defendant's cross-bill is based.

That leaves to be determined only the question whether any fraud, actual or constructive, was practiced upon the deceased and his wife in the procuration of the release, and after careful consideration of the evidence I am satisfied that there was none.

Considerable evidence was given as to disturbances in Mr. Baldwin's mind from the time that he was injured up to and after the date of the release, but it appeared that such disturbances were not constant, and a great part of the time he manifested no signs of mental disturbance—was able to answer questions intelligently and to talk intelligently. Dr. Fisher swears that when he saw him on December 17th he did not see or suspect any mental disturbance indicating a lesion of the brain, and Mr. Woolsey swears to the same thing. The man was able to go about alone, and came to the office of the company once or twice, and in his conversations with Mr. Woolsey manifested no mental disturbance; and on the occasion of the signing of the release there was nothing in his manner or appearance to indicate any mental weakness or want of mental balance. The testimony of Mr. Lewis, and that of Mr. Stevens who was present at the time, is quite clear and distinct, to the effect that the release was read over and carefully explained and its effect stated to Mr. and Mrs. Baldwin before it was signed. Mrs. Baldwin appears to be a bright and intelligent woman and to have had her attention called to the liability of the company to her hus-

band before the release was signed, because when Mr. Lewis protested on behalf of the company that it denied any liability on its part for the accident, on the ground that if it was the result of negligence it was that of a fellow-servant, Mrs. Baldwin answered that she thought it would be liable for keeping in its employ a deaf engineer.

No officer of the company had any reason to suspect, at the time the release was executed, that there was any weakening of the mind of Mr. Baldwin, and he manifested no indications of insanity. No officer of the company sought out Mr. Baldwin and asked him to settle, but he applied in person to the superintendent of the company for further assistance or compensation, and the letter written to him by Mr. Woolsey was the result of that application. The fact is that neither party supposed at the time that the accident would permanently disable, much less result in the death of, Mr. Baldwin; and it was not until a long time after the release was signed that anyone made any complaint of the conduct of the officers of the company in procuring the signatures thereto; and it is impossible to believe, after seeing Mrs. Baldwin on the stand and hearing the evidence of Mr. Lewis and Mr. Stevens, that she did not fully comprehend its contents and nature when she signed it.

For these reasons I am unable to see that I can grant the defendant any relief on her cross-bill; and as the complainant asks for no relief on its bill, the result is that both suits must be dismissed, without costs to either party, upon the complainant stipulating that the defendant may plead *non est factum* or such other pleading as will enable her to set up insanity as a defence to the release pleaded in the action at law, if she has not already filed such pleading.